UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLE JEANNE BERRY,

    *Plaintiff*,

*v.*                                    CASE NO. 11-CV-15206

COMMISSIONER OF                DISTRICT JUDGE SEAN F. COX
SOCIAL SECURITY,                 MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.   RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.   REPORT**

    **A.   Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and for disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits ("DIB"). This matter is currently before this Court on cross-motions for summary judgment. (Docs. 9, 12.)

Plaintiff was 42 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 33, 92.) Plaintiff's employment history includes work as a bartender for four years, as a receptionist for one year, and as a waitress for eleven years. (Tr. at 123.) Plaintiff filed the instant claim on November 13, 2007, alleging that she became unable to work on January 1, 2004. (Tr. at 92.) The claim was denied at the initial administrative stages. (Tr. at 46.) In denying Plaintiff's claims, the Commissioner considered disorders of back, discogenic and degenerative, and affective disorders as possible bases for disability. (*Id.*) On December 1, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Troy M. Peterson, who considered the application for benefits *de novo*. (Tr. at 12-24, 29-45.) In a decision dated February 26, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 24.) Plaintiff requested a review of this unfavorable decision on March 10, 2010. (Tr. at 5-7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 23, 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On November 28, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.     Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the

agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2011, and that Plaintiff had not engaged in substantial gainful activity since the amended onset date of November 15, 2006. (Tr. at 17.) At step two, the ALJ found that Plaintiff's back pain, foot pain,

bipolar disorder, major depressive disorder, and generalized anxiety disorder were "severe" within the meaning of the second sequential step. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 17-18.) At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (Tr. at 23.) The ALJ also found that on the alleged amended disability onset date, Plaintiff was a younger individual, age 18 to 49. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 19-23.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 24.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that in November 2005, Plaintiff had a ganglion non-malignant cyst removed from her right foot. (Tr. at 157-58.)

Plaintiff participated in physical therapy from December 2006 through January 2007 for a "L5-S1 disc bulge." (Tr. at 164, 180.) It was noted at the time of her discharge from physical therapy that the short-term goals were met because Plaintiff "had decreased pain for improved sleeping." (*Id.*)

An MRI of Plaintiff's lumbar spine taken on November 15, 2006, showed "broad-based disc bulge at L5-S1 with minimal ventral impression on the thecal sac" and that an "[i]ntraforaminal extension of disc material bilaterally abuts without frankly compressing the exiting L5 nerve roots." (Tr. at 179.)

In 2007, Plaintiff was treated for left foot pain and depression by Dennis M. Lloyd, D.O. (Tr. at 170-78.) On July 23, 2007, Dr. Lloyd assessed Plaintiff with "[r]esolved left foot pain" and

"[d]epression," and continued the prescription medications of Vicodin and Prozac. (Tr. at 170, 237.)

On October 24, 2007, Plaintiff was examined by Matthew P. Dickson, Ph.D., of Disability Determination Services ("DDS"). (Tr. at 188-91.) Dr. Dickson diagnosed Dysthymic Disorder, a GAF score of 59, and gave a "guarded prognosis." (Tr. at 191.) Dr. Dickson found Plaintiff's "speech was unimpaired[,]" her "stream of mental activity was spontaneous and organized[,]" her "affect was appropriate to mood[,]" and she was "oriented to time, place and person." (Tr. at 188-90.) Dr. Dickson also commented that Plaintiff's "psychological condition would moderately impair her ability to perform work related activities." (Tr. at 190.)

On October 25, 2007, Plaintiff was examined by DDS physician J. L. Tofaute, M.D. Dr. Tofaute noted that "[t]his woman has been in fairly good health by the sound of it." (Tr. at 192.) Dr. Tofaute also noted that "[t]here were no objective findings that she would walk better with a handheld walking device[,]" and that Plaintiff was "intelligent to deal with, and showed us good facility in the handling of small objects, alternatively picking up coins with one hand and then the other." (Tr. at 193-94.)

A Psychiatric Review Technique was completed on November 8, 2007, by Leonard Balunas, Ph.D., who diagnosed Plaintiff with affective disorders, i.e., "Dysthmic DO." (Tr. at 201, 204.) Dr. Balunas found Plaintiff to be mildly limited in activities of daily living, maintaining social functioning, and in maintaining concentration, persistence or pace. (Tr. at 211.)

A Physical Residual Functional Capacity ("RFC") Assessment was completed on November 9, 2007, by Rainell Bell, who concluded that Plaintiff can occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was unlimited in her ability to push or pull. (Tr. at 216.) The Assessment also

8

concluded that Plaintiff was frequently limited in all postural areas except occasionally limited in climbing stairs and balancing and that she should never climb ladders, ropes or scaffolds because of residual numbness in her foot. (Tr. at 217.) There were no manipulative, visual, communicative, or environmental limitations established, except that Plaintiff should avoid hazards. (Tr. at 217-19.) The Assessment concluded that the restrictions described by Plaintiff "appear excessive in light of the obj[ective] m[edical]/e[vidence] findings." (Tr. at 220.)

On January 12, 2009, Dr. Lloyd diagnosed "[d]iffuse lower extremity arthralgias/myalgias[,]" "[e]arly osteoarthritis[,]" "[u]rinary incontinence[,]" "[c]hronic low back pain[,]" "H/o L5, S1 disc disease" and "[d]epression," and continued Plaintiff's prescription medication. (Tr. at 245-46, 263-64.)

On February 11, 2009, x-rays of Plaintiff's feet showed "[s]mall bilateral plantar calcaneal spurs." (Tr. at 254.)

On November 11, 2009, Dr. Lloyd referred Plaintiff to Purna Surapaneni, M.D., at the Hillside Center for Behavioral Services. (Tr. at 278.) Dr. Surapaneni diagnosed Plaintiff with Bipolar Type II Disorder, assessed a GAF score of 50, continued and increased prescription medication and "plan[ned]to monitor treatment and keep [Dr. Lloyd] updated as the case may warrant while she maintains contact with her psychotherapist, Dr. Biafora." (Tr. at 278, 280.)

On October 11, 2009, Dr. Biafora indicated the prescription treatment plan would be continued. (Tr. at 281.) On October 15, 2009, Dr. Biafora diagnosed Plaintiff with Bipolar II Disorder, Major Depressive Disorder Single Episode without psychotic features, Generalized Anxiety Disorder, and Primary Insomnia, and assessed a GAF score of 40. (Tr. at 285-86.)

In her daily activity report, Plaintiff stated that she was able to "get her son up to get ready for school," "fold the laundry," watch television, take care of her personal care needs, prepare

meals, go out to dinner, go out on the deck or to the store, drive and ride short distances, shop in stores "2-3 times weekly[,]" manage finances, and socialize with her family in person and on the phone everyday. (Tr. at 129-33.)

At the administrative hearing, Plaintiff testified that she lives with her husband, son, daughter, her daughter's baby and her daughter's boyfriend and that they take care of the house work, yard work, and grocery shopping. (Tr. at 36-37.) Plaintiff testified that she no longer does any exercises or physical therapy because "[t]hey weren't really doing anything for me[.]" (Tr. at 40.) Plaintiff testified that she is able to drive but doesn't "drive a whole lot . . . because of some of the medications I take, I don't feel comfortable driving . . . ." (Tr. at 40-41.) Plaintiff stated that no doctor has mentioned surgery as a possibility for treatment. (Tr. at 41.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who "has a residual functional capacity for light work as that term is defined in Social Security regulations and the DOT. And assume that in addition to – that she is limited to only superficial interpersonal contact with corkers and the public due to a mental impairment." (Tr. at 43.) The VE responded that such a person could perform the "light and unskilled" jobs of dishwasher, janitor, and maintenance worker. (*Id.*) The ALJ asked the VE whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and he responded that it was. (Tr. at 43-44.) The ALJ asked if Plaintiff's counsel had any questions for the VE, but Plaintiff's attorney indicated that he had no questions for the VE. (Tr. at 44.)

  **F. Analysis and Conclusions**

  **1. Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work. (Tr. at 19-23.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff contends that the ALJ failed to form an accurate hypothetical, specifically arguing that although the ALJ found Plaintiff could perform light work, the VE's testimony referenced jobs that are not in the light category. (Doc. 9 at 9.) Plaintiff contends that the jobs of kitchen helper and janitor are at the medium level, and the job of grounds maintenance worker is at the heavy level. (*Id.*) Plaintiff argues that since "[n]one of these jobs are in the light category as testified to by the VE[,] . . . we believe the ALJ cannot use this testimony as a basis to deny benefits to our client."

11

(*Id.*) The Commissioner counters that the ALJ did not err in relying on the VE's unchallenged testimony. (Doc. 12 at 8.)

In this circuit, Social Security Ruling 00-4p is satisfied by the ALJ simply asking the VE if her testimony is consistent with the DOT. *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006). Therefore, I suggest that the ALJ was not under any obligation to inquire further into the accuracy of the VE's testimony beyond asking whether the VE's testimony was consistent with the DOT and receiving the VE's response that it was, especially in light of the fact that Plaintiff's counsel failed to assert at the hearing that any conflict existed. *See Ledford v. Astrue*, 311 Fed. App'x 746, 757 (6th Cir. 2008) ("Nothing in the applicable Social Security regulations requires an administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge"); *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. App'x 163, 168 (6th Cir. 2009) (where plaintiff "had the opportunity to cross-examine the [vocational expert] and bring out any conflicts with the DOT . . . [t]he fact that plaintiff's counsel did not do so is not grounds for relief").

I suggest that, as noted in the physical RFC analysis, there is no objective medical evidence of disabling physical impairments. (Tr. at 220.) In addition, I suggest that there is no objective evidence of disabling psychological conditions as the Psychiatric Review technique concluded that Plaintiff's mental impairments only "mildly" limited her functioning. (Tr. at 211.) Neither Plaintiff's physical or psychological impairments required treatment beyond physical and psychological therapy and prescription medications. Plaintiff indicated that no surgery was even recommended for her physical impairments and Plaintiff was never hospitalized nor did she seek emergency treatment for any psychological issues. (Tr. at 41.) Such modest treatment is

inconsistent with a finding of disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007); *Helm v. Comm'r of Soc. Sec.*, 405 Fed. App'x 997, 1001 (6th Cir. 2011).

As to the overall RFC analysis, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that she can "get her son up to get ready for school[,]" "fold the laundry[,]" watch television, take care of her personal care needs, prepare meals, go out to dinner, go out on the deck or to the store, drive and ride short distances, shop in stores "2-3 times weekly[,]" manage finances, and socialize with her family in person and on the phone everyday. (Tr. at 129-33.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections

a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                        s/ **Charles E. Binder**
                        CHARLES E. BINDER
Dated: October 9, 2012           United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: October 9, 2012         By    s/Patricia T. Morris
                                        Law Clerk to Magistrate Judge Binder